**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**KIRBY INLAND MARINE, L.P.** **CIVIL ACTION**

**VERSUS**

**LBC HOUSTON, L.P., ET AL.** **NO.: 11-00264-BAJ-RLB**
**C/W NO.: 11-00737-BAJ-RLB**

**<u>RULING & ORDER</u>**

Before the Court is Third Party Defendant Intertek, USA Inc.'s ("Intertek") **Motion for Summary Judgment (Doc. 72),** seeking an order from this Court dismissing the Third Party Plaintiffs LBC Houston, L.P., LBC Baton Rouge, L.L.C., and LBC Operations (U.S.), L.L.C.'s (collectively "LBC Entities") claims, pursuant to Federal Rule of Civil Procedure ("Rule") 56. LBC Entities oppose the motion. (Doc. 75.) Intertek filed a reply memorandum. (Doc. 83.) The Court has jurisdiction pursuant to 28 U.S.C. § 1333.

## I. Background

This case involves the various claims related to an explosion on the barge KIRBY 11323, owned by Plaintiff Kirby Inland Marine, L.P. ("Kirby Inland") at LBC Baton Rouge's dock on April 24, 2010 near Geismar, Louisiana. (Docs. 1, 15.) LBC Entities filed a Third Party Complaint against Intertek pursuant to Rule 14(c) on July 25, 2012. (Doc. 51.) LBC Entities allege that Intertek is liable for damages to the

Barge KIRBY 11323, due to the fault, negligence, and lack of due care on the part of both Intertek and its inspector, Michael Hoover ("Hoover"). (Doc. 51, ¶ 16.) LBC Entities seek full indemnity from Intertek for the claims made against them by Plaintiff Kirby Inland, Third Party Plaintiff John Robert Williams, III ("Williams"), Third Party Plaintiff Lucien Templet, Intervenor American Interstate Insurance Company, Third Party Plaintiff Signal Mutual Indemnity Association, and Third Party Defendant Team Services, LLC ("Team Services"). (Doc. 51, ¶¶ 4-9, 16.) LBC Entities further seek costs, expenses, and attorney's fees. (Doc. 51, ¶¶ 16-17.)

According to the relevant undisputed facts[1]:

1. As a tankerman, John Robert Williams, III was the vessel person-in-charge for the KIRBY 11323. 46 C.F.R. § 15.860.
2. On April 24, 2010, the dock person-in-charge was Morris Wright, Jr., a LBC employee.
3. Wright was the only dock person-in-charge on that date, and was supervising two transfers at the time of the explosion.
4. In its business of performing cargo inspections, Intertek's role is to "observe, record, and report" on the quantity and quality of the cargo being loaded for its customers.

[1] Pursuant to Local Rule 56.1, Intertek submitted a statement of undisputed material facts with its motion for partial summary judgment. (Doc. 72-2.) LBC Entities filed a response. (Doc. 75-18.) Pursuant to Local Rule 56.2, certain material facts are deemed admitted for purposes of this ruling and order.

5. For the cargo inspection of the KIRBY 11323, Intertek was notified by its customer, Kolmar, that 10,000 barrels of benzene were to be loaded into the barge.

6. Kolmar instructed Intertek to inspect the barge to determine the suitability of the tanks for the loading of the benzene cargo, measure the amount of cargo loaded, and take samples of the benzene during the course of loading for testing.

7. In inspecting the cargo tanks of the KIRBY 11323, Intertek was instructed only to determine whether the tanks were suitably clean to load the liquid cargo.

8. When examining the barge's cargo tanks, an inspector can see only the areas of the tank visible from the sight glass for each tank and verify that the tank is suitably dry and clean.

9. A line displacement was to be performed at the beginning of the loading of the KIRBY 11323.

10. A line displacement is performed at the beginning of a load of cargo to determine the condition of the cargo line from the shore to the vessel, i.e., whether it is completely full of product, partially full, or slack.

11. Prior to examining the barge and preparing it for loading, Williams met with Hoover and they discussed Intertek's customer's request to perform a line displacement for the benzene load.

12. Williams testified that he would have the line displacement performed into a single tank.

13. The decision as to the number of tanks into which a line displacement is performed is ultimately made by the vessel person-in-charge.

14. The inspector does not have a role in determining the number of tanks into which the line displacement is performed.

15. When Hoover inspected the barge, he looked through the sight glasses into each of the cargo tanks to determine whether the tanks were dry and compatible with the cargo to be loaded, benzene.

16. Looking into the sight glass is standard accepted procedure to determine whether a barge is clean enough to receive the cargo to be loaded.

17. Team Services, the party that Kirby Inland arranged to provide the tankerman services for the KIRBY 11323, does not allow any person to enter a confined space, including a barge cargo tank, to check cleanliness on a barge, when its tankermen are the vessel persons-in-charge.

18. Hoover saw that the cargo tanks of the KIRBY 11323 were dry, and told Williams accordingly.

19. Williams checked to make sure that the sight glasses into the tanks were clean and confirmed that the tanks were "powerhouse dry."

20. Hoover's inspection took approximately ten minutes and, once it was completed, Hoover left the Kirby 11323 and waiting [sic] in the dock shack for loading to begin.

21. After Williams completed his inspection and preparation of the barge for loading, he and Wright met for the Pre-Transfer Conference.

22. Williams is "sure" that he discussed with Wright the tank into which the line displacement was to be performed.

23. The number one center tank of the KIRBY 11323 exploded approximately two minutes after loading began.

24. Approximately 43 barrels of benzene flowed into the KIRBY 11323 before the explosion occurred and the product valves were closed.

## II. Standard of Review

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Id.* The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502

U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## III. Analysis

As the basis for their Third-Party Complaint, LBC Entities allege that Intertek is responsible for the explosion of the KIRBY 11323 and resulting damages due to the negligence and lack of due care exercised by Intertek and its inspector, Hoover. "[N]egligence is an actionable wrong under general maritime law," and the elements of that tort are "essentially the same as land-based negligence under the common law." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 211 (5th Cir. 2010)

(quoting *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005)). To state a claim for relief under maritime law, the "plaintiff must 'demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by [the] plaintiff, and a causal connection between the defendant's conduct and the plaintiff's injury.'" *Id.* (internal citations omitted). Absent a legal duty, a cause of action for negligence must fail. *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).

In support of the motion, Intertek argues that LBC Entities' claim against Intertek fails on the first element, the requirement of a duty. Intertek contends that there is no genuine issue of material fact that it did not owe a duty to LBC Entities, as it did not play a role in the loading process. Intertek also argues that it did not have a contractual, statutory, or customary duty to LBC Entities. Rather, Intertek contends that its only duty was to "observe, record, and report" on the quality and quantity of the petroleum cargo loaded into the KIRBY 11323, as required by its contract with its customers.[2]

In opposition, LBC Entities argue that there are genuine issues of material fact as to whether Intertek had a duty to LBC Entities. LBC Entities contends that the duty of care may be derived from three basic sources: (1) duly enacted laws, regulations, and rules; (2) customs; and (3) the dictates of reasonableness and prudence. LBC Entities argue that a duty of care exists when the potential for injury

---

[2] Intertek's customers included Total Petroleum, Marathon Petroleum, and Kolmar Petroleum. (Doc. 72-3, pp. 32-36.)

is foreseeable. LBC Entities also contend that the loading of a barge with benzene involves three parties: the inspector, the vessel person-in-charge, and the dock person-in-charge, not just the vessel person-in-charge and the dock person-in-charge. According to LBC Entities, the forseability of injury from static electricity is apparent from the services Intertek provides. Accordingly, Hoover had a duty to verify that the number one cargo tank was free of debris or liquid before commencing loading, and a duty to communicate with the dock person-in-charge that the line displacement procedure was only going to occur in the number one cargo tank.

Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances. *Great Lakes Dredge*, 624 F.3d at 211 (citing *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). Duty "may be owed only with respect to the interest that is foreseeably jeopardized by the negligent conduct." *Consol. Aluminum v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987.) If there is no duty owed, there can be no cause of action for negligence. *See In re Cooper/T. Smith*, 929 F.2d at 1077.

Generally, when there is no contractual relationship between the parties, no legal provisions, or customary standards, courts will find that the defendant owed no duty to the plaintiff. *See Scindia Steam Nav. Co. v. De Los Santos,* 451 U.S. 156, 172 (1981). However, some courts have held a duty may arise from statutory standards, customs, and dictates of reasonableness and prudence. See *Tidewater Marine Inc., v. Sanco Intern, Inc.*, No. CIV. A. 96-1258, 1997 WL 543108, at *3 (E.D. La. 1997) (holding that "the absence of a contractual obligation does not "immunize or authorize negligent conduct...."). Here it is undisputed that there was no contract between

Intertek and LBC Entities. Thus, no contractual duty existed between the parties. Accordingly, the only remaining issue is whether Intertek had a statutory or customary duty to LBC Entities.

It is undisputed that Coast Guard regulations require that the sequence of loading and critical stages of the transfer operation, including the initial fill and line displacement, be discussed, determined, and agreed upon between the dock and vessel persons-in-charge, not the inspector *and* the persons-in-charge. 33 C.F.R. §§ 156.120, 150. The regulations further provide that the only two persons who have any responsibilities in the loading of a barge are the persons-in-charge; namely, the vessel person-in-charge and the dock or facility person-in-charge. 33 C.F.R. §§ 156.120, 156.150, 155.700; 46 C.F.R. § 15.860. The two persons-in-charge have a duty to determine whether it is safe to load a particular vessel, and the loading procedures to be used. *Williams v. Hollywood Marine*, 717 F. Supp. 437, 444 (E.D. La. 1989) ("The duties of a person in charge . . . are outline in the Coast Guard regulations.").

The Coast Guard regulations further require the vessel person-in-charge and the dock person-in-charge to participate in a Pre-transfer Conference and to discuss and agree on all details of the cargo transfer. Those details include the cargo to be loaded into the vessel, the sequence of loading, the vessel conditions, and the rate of loading. 33 C.F.R. §§ 156.120, 156.150. Indeed, LBC Entities have failed to point to, nor has the Court identified, any federal or state regulations or industry standard placing responsibilities on the cargo inspector regarding the loading of a vessel for a cargo transfer or determining whether it is safe to load a vessel.

In support of the motion, Intertek points to the testimony of LBC Entities' corporate representative, who testified that the tankerman or vessel person-in-charge is in charge of the barge and that the inspector does not have a role in determining the number of tanks into which a line displacement is performed. (Doc. 72-7, pp. 27-36, Knowles Depo. at p. 42.) LBC Entities have failed to point to any evidence in the record to contradict this testimony.

Further, it is undisputed that the required meeting between Hoover and the vessel person-in-charge regarding the quantity of the product to be loaded, whether the Hoover was appointed for a quality determination of the cargo, and whether a line displacement will be performed occurred on the day of the explosion. Accordingly, Intertek contends Hoover complied with the applicable requirements. In sum, the Court concludes that LBC Entities have failed to point the Court to sufficient evidence that Intertek had a statutory or customary duty to determine or communicate the number of tanks into which a line displacement was being performed.

In opposition, LBC Entities argue that Hoover should have used "whatever means are necessary" to determine whether the barge was clean and dry. However, it is undisputed that it is standard industry practice for the cargo inspector to look in the sight glass to perform an inspection. It is also undisputed that an inspector cannot open and enter a tank unless specifically ordered to do so by a customer, because the process of entering and inspecting the tank is governed by regulations requiring testing and monitoring of the tank. 29 C.R.R. § 1910.146.

Further, LBC Entities have failed to refute Hoover's testimony that, if a tank hatch is opened, personal protection equipment is required. Such testimony supports the conclusion that Hoover could not have simply opened the tank hatch and looked in the tank for debris. Further, LBC Entities have failed to point to any evidence in the record to support the contention that if Hoover had opened the tank hatch, he would have been able to see more of the cargo tank than what was visible to him through the sight glass. Indeed, LBC Entities have failed to point to any statute or custom that required Hoover to do so. In sum, the Court concludes that LBC Entities have failed to point the Court to sufficient evidence that Intertek had a statutory or customary duty to open the KIRBY 11323 barge tanks to confirm the absence of water or debris within the tanks.

The United States Court of Appeals for the Fifth Circuit has consistently held that the most notable factor in the duty determination is foreseeability. *See, e.g., In re Great Lakes Dredge and Dock Co., L.L.C.*, 624 F. 3d 201, 214 (5th Cir. 2010); *In re Signal Intern, Inc. v. Signal International, L.L.C.*, 579 F. 3d 478 (5th Cir. 2009); *Daigle v. Point Landing, Inc.*, 616 F. 3d 825 (5th Cir. 1980). The existence of a duty hinges upon whether the plaintiff's damages were foreseeable to a reasonably thoughtful person. *Consolidated Aluminum Corp. v. C.F. Bean Corp.*, 833 F. 2d 65 (5th Cir. 1987).

Here, LBC Entities have failed to point to sufficient evidence to establish that the parties' damages were foreseeable. As noted above, only two persons have any responsibilities in the loading of KIRBY 11323: the vessel person-in-charge and the dock person-in-charge. Given Hoover's limited role to "observe, record, and report" on

the quantity and quality of the cargo being loaded for its customers, it cannot be said that LBC Entities' damages were foreseeable to him, or Intertek.

In sum, the Court concludes that LBC Entities have failed to point the Court to sufficient evidence to establish that Intertek had a duty to LBC Entities. Accordingly, the Court concludes that there is no genuine issue of material fact that Intertek did not have a duty LBC Entities. Based on this conclusion, the Court need not consider the remaining elements of LBC Entities' negligence claim.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Third Party Defendant Intertek, USA Inc.'s ("Intertek") **Motion for Summary Judgment (Doc. 72)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Third Party Plaintiffs LBC Houston, L.P., LBC Baton Rouge, L.L.C., and LBC Operations (U.S.), L.L.C.'s claims against Third Party Defendant Intertek, USA Inc. are hereby **DISMISSED**, with prejudice.

Baton Rouge, Louisiana, this 31st day of March, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**